BATEMAN'S EXECUTOR *vs.* BATEMAN and others.

1. A testator directed, among other things, that the residue of his estate (after certain appropriations) should be placed in charge of a trustee, to be appointed by the Orphans Court of Cumberland county ; and as to the income thereof, after paying the premiums on certain policies of life insurance, he directed as follows : " The balance, every six months, shall be paid over to my intended wife, L. K. L., each and every year, so long as she shall remain unmarried. But, in the event of her marriage, then I do order that the legacy or annuity herein devised shall cease forever, and that the sum of $2000 be taken from the principal sum thus invested, and paid over to her, in lawful money of the United States, hoping this sum may assist her in rendering that condition of life a comfortable and happy one." The testator afterwards married Miss L., and died without issue. She survives him, and is unmarried. The Orphans Court refused to appoint a trustee. The widow insists she is entitled to the income, and cannot be compelled to accept the sum in gross. *Held,* that the widow is entitled to the income of the residue, after payment of the premiums ; that the gift of $2000 was only intended in the event of her marriage after testator's death, and not of her marriage with him. A trustee was also appointed to take charge of the fund.

2. Costs in suit by executor for construction of will, ordered to be paid out of the estate.

Argued on pleadings and proofs.

*Mr. P. L. Voorhees,* for the executor.

*Mr. F. F. Westcott,* for the widow.

THE CHANCELLOR.

The bill is filed by the executor of the will of the late Adrian Bateman, of Bridgeton, in this state, for a construc-

tion of that instrument, and the appointment of a trustee under the will. The testator died in 1872, leaving a will (a holograph) dated October 25th, 1866, in which, among other things, he provides as follows:

"*Item* 9. I do order that all the balance of my property and estate which may remain, after the payment of my just debts and expenses in any manner lawfully incurred, and the payment of all legacies hereinbefore devised, be placed under the control and in the charge of a trustee or trustees, who shall be appointed by the judges of the Orphans Court of Cumberland county, New Jersey, and by said person or persons so appointed as trustee or trustees, said balance of my estate shall be carefully invested in first bond and mortgage on real estate in the State of New Jersey, and the interest on the same shall be payable and collected semiannually (or every six months of each and every year); and after deducting sufficient money therefrom to meet the premiums due on the life insurance policy or policies, as they may become due (which are noticed in *Item* 10 of this my last will and testament), the balance, every six months, shall be paid over to my intended wife, Louisa K. Logue, daughter of James Logue, of Bridgeton, New Jersey, each and every year, so long as she shall remain unmarried. But, in the event of her marriage, then I do order that the legacy or annuity herein devised shall cease forever, and that the sum of $2000 be taken from the principal sum thus invested, and paid over to her, in lawful money of the United States (her receipt, and hers only, being a good and sufficient voucher for the same), hoping this sum may assist her in rendering that condition of life a comfortable and happy one. And I do further order that the balance of investments, in the event of the marriage or death of the said Louisa K. Logue, shall be divided equally between Elkanah Bateman, Aaron Bateman, Hannah I. Hunt, Moses Bateman, and Nathaniel S. Bateman, or the heirs of all of them, to share and share alike.

"*Item* 10. Whereas, there are among my effects several life

insurance policies, on some of which, in order to preserve their validity, I annually pay a premium to the said companies. Now it is my will and desire that these several policies should be kept valid until they become due and are paid; therefore, I do order that my executor shall, from time to time, draw from the interest on the legacy mentioned and invested in *Item* 9 of this my last will and testament, such sums as may be necessary to pay the premium and keep good and valid the several policies in full force and virtue, and I do hereby order the person or persons who may be appointed trustee or trustees, according to *Item* 9 of this my last will and testament, to pay over to my executor, from time to time, such moneys as he may need for this purpose from the interest of said fund, his receipt being a good and sufficient voucher for the same."

The testator and Miss Logue were married in 1868. She survives him, and has not remarried. There was no issue of the marriage. The residue of the estate is a large sum, $20,000, or thereabouts. The judges of the Orphans Court of Cumberland county have refused to appoint a trustee under the will. The widow claims that she is entitled to the income of the residue, excepting so much as may be necessary for the payment of the premiums upon the life policies. Her claim is disputed, on the ground that by her marriage to the testator she lost her right to that provision, and it is insisted that she is only entitled to the sum of $2000 in gross.

The testator intended to provide for her, in the event of his death before the marriage, which at the time of making the will had been contracted for between them, should have been solemnized, and the will was probably made in view of that contingency. It provides that, after his death, she, his "intended wife," shall enjoy the income of the residue, except so much as shall be necessary to pay the premiums on the life policies, so long as she shall remain unmarried.

But it further provides that, in the event of her marriage, that provision shall wholly cease, and a gross sum of $2000

be paid to her out of the body of the fund. This latter provision gives rise to the question raised in this cause.

Had there been no marriage between her and the testator, she would, of course, have been entitled to the income, and notwithstanding the marriage, she is equally entitled to it (for the marriage of the testator to her after the making of the will, would not be a revocation of the legacy), unless deprived of it by the terms of the will itself. Does the will, by its terms, deprive her of the income? It is insisted that it does, by the provision for a reduction in the event of her marriage, it being argued that the marriage contemplated by that provision was no less the marriage of the legatee to the testator than her marriage to any one else, whether before or after the testator's death.

The testator, in this instrument, makes liberal provision for the legatee, as his betrothed. Is it not reasonable to presume, that so far from reducing the amount of that provision, in the event of her becoming his wife, he would rather have increased it? Is it reasonable to presume, that he intended that, by her marriage to him, she should forfeit her claim to the provision she otherwise would have enjoyed? Is it not reasonable to presume, that if he had intended that his marriage to her should work a change in the provision he had made for her, he would have said so in terms? And yet, if indeed it was his intention that she, as his widow, should only receive the gross sum, instead of the income, such must be the construction. I look in vain for any evidence of an intention, that the marriage of the legatee to the testator, should effect any change in the provision made for her. The fact that he left this will in full force and unaltered, is of itself evidence to the contrary; and I find, in the will, satisfactory evidence that the marriage, in the event of which the reduction was to take place, was one which was to be contracted after the testator's death. It is *after his death* the residue is to be funded; *after his death* she is to receive the income so long as she shall remain unmarried; the gross sum she is to receive in the event of her marriage, is to be paid

out of the body of the fund, which is to be created *after his death;* and it is *after his death* that she is to forfeit the income, if she forfeits it at all. It is noteworthy, in this connection that the gross sum of $2000, which is to be given to her in the event of her marriage, is accompanied with the expression of a " hope that that sum may assist her in rendering that condition of life a comfortable and happy one." Was it his own contemplated marriage to her to which he thus alluded? The answer is obvious.

I do not deem it necessary to apply other rules of interpretation to the instrument under consideration. To my mind, the testator's intention clearly was, that the legatee, as his widow, should enjoy the same provision he had made for her as his " intended wife," so long as she should remain true to his memory—that is, until, by her marriage, after his death, she should forfeit it.

I shall decree that the trusts in the will be executed; that the widow is entitled to the income of the residue, except so much as may be required to pay the premiums on the life policies, during her widowhood; and I shall appoint a trustee to take charge of and administer the trust fund.

The view I take of this case, from the will itself, and the admitted facts, renders it unnecessary for me to pass upon the parol testimony adduced in the cause.

The costs should be paid out of the estate.